IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | CR. NO. 08-20001 |
| vs. | ) | 18 U.S.C. § 1951(a) |
| | ) | 18 U.S.C. § 666 |
| EDMUND H. FORD, | ) | |
| JOSEPH LEE, III, | ) | |
| Defendants. | ) | |

## INDICTMENT

**THE GRAND JURY CHARGES:**

### BACKGROUND CONCERNING GOVERNMENTAL ENTITIES INVOLVED AND DEFENDANTS EDMUND H. FORD AND JOSEPH LEE, III

1. The City of Memphis operates under a mayor-council form of government. The city charter provides for the election of a mayor and thirteen council members. The City Council members are elected to four year terms. Under the provisions of the city charter, the City Council enacts legislation for the City, such as ordinances and resolutions. The City Council has several standing committees of Council members which meet in advance of City Council meetings to review items to be submitted to the full Council. The committees cover different subject areas. The City Council exercises its legislative responsibilities at public meetings during which the Council members vote on these issues. The meetings generally occur twice a month in the Memphis City Hall.

2. Memphis Light, Gas and Water Division ("MLGW") is a division of the City of Memphis. MLGW is managed by its President and a five member Board of Commissioners that are nominated by the City Mayor and approved by the City Council.

MLGW provides electricity, gas and water to customers in Shelby County, Tennessee, which includes the City of Memphis. MLGW's annual budget and electric, gas and water rates require the approval of the Council. MLGW must also obtain the approval of the Council before incurring certain obligations. The daily operation of MLGW is managed by the President and Chief Executive Officer, who is nominated for a five-year term by the Mayor of the City of Memphis and approved by the City Council. Resolutions before the City Council concerning MLGW are reviewed in advance by a committee of the City Council. During the period from 2004 through 2006, that committee was the General Services & Utilities Committee.

3. JOSEPH LEE, III ("LEE") became President and Chief Executive Officer of MLGW on or about June 15, 2004. He held those positions until on or about May 3, 2007. LEE's initial salary was approximately $215,000 per year.

4. In 1999, Defendant EDMUND H. FORD was elected to the Memphis City Council as the District 6 representative, and from then through December 2007, he was a City Councilman. He was most recently re-elected to a four year term as a City Councilman in 2003. FORD also operates the E. H. Ford Mortuary at 3390 Elvis Presley Blvd, Memphis, Tennessee.

5. During the time periods relevant to this superseding indictment, FORD had two accounts with MLGW for service at the E. H. Ford Mortuary, 3390 Elvis Presley Blvd, Memphis, Tennessee. The two accounts were (1) Account No. 00045-2569-1421-662, mailing address: 3390 Elvis Presley Blvd, Memphis, Tennessee ("the 3390 account"); and (2) Account No. 00045-2569-1421-659 (mailing address: 3402 Elvis Presley Blvd, Memphis, Tennessee ("the 3402 account"). The 3390 account was primarily for electric

and gas service at the mortuary. The 3402 account was for water service at the mortuary although some gas charges were billed to that account.

6. FORD was an important supporter of LEE's nomination for and ultimately appointment as President and Chief Executive Officer of MLGW. FORD was also an important supporter of LEE's administration of MLGW as it was overseen by the City Council. On or about December 28, 2004, FORD began a one-year term as Chairman of the City Council. On or about January 3, 2006, FORD began serving as chairman of the City Council's General Services & Utilities Committee, which oversaw MLGW, and he held that position to at least November 30, 2006.

7. EDMUND H. FORD's support for LEE included but was not limited to the following:

a. FORD supported LEE's nomination for and ultimately appointment as President and Chief Executive Officer of MLGW.

i. On or about January 6, 2004, LEE's was nominated to be President and Chief Executive Officer of MLGW. The nomination was discussed at a meeting of City Council members that day. FORD spoke in favor of LEE's nomination and noted that he (FORD) had run for the City Council because of his concerns about MLGW.

ii. LEE's nomination was not approved and ultimately a committee was formed to conduct a search for candidates for the position. On or about March 5, 2004, FORD was appointed to that committee. FORD spoke in favor of LEE's nomination at meetings of this committee. FORD also voiced his support of LEE to others, including the media.

3

   iii. LEE's nomination was again discussed by the City Council on or about June 15, 2004. FORD spoke in favor of LEE's nomination and again noted that he (FORD) had run for the City Council because of his concerns about MLGW. The City Council approved the nomination.

  b. FORD supported LEE's administration of MLGW as it was overseen by the City Council. Examples of FORD's support include but are not limited to the following:

   i. On or about August 16, 2005, FORD attended a meeting of the City Council's General Services & Utilities Committee during which the committee discussed proposed salaries of two appointees for senior MLGW executive positions which had been submitted by LEE. FORD spoke at length in response to questions about the proposed salaries raised by other City Council members. Later that day during the consideration of this issue at a City Council meeting, FORD again spoke in support of the proposed salaries and implied that criticism of the proposals was due to improper motives. FORD also noted his support for LEE and again noted that he (FORD) had run for the City Council because of his concerns about MLGW.

   ii. In or about December 2005, a controversy concerning MLGW's budget delayed its approval by the City Council. FORD supported the proposed budget and at one point proposed bypassing the City Council's General Services & Utilities Committee and having the budget submitted directly to the City Council. The budget was ultimately approved on or about December 20, 2005, and FORD seconded the motion to approve the budget.

 8. In return and as a reward for FORD's support, LEE forestalled and prevented efforts to collect outstanding balances on FORD's MLGW accounts. Beginning

in June 2004, and continuing through at least November 30, 2006, FORD was constantly delinquent in paying his MLGW bills but his utilities services were not cut off. The 3390 account was opened on or about February 10, 2004. By the end of 2004, the unpaid balance on the account exceeded $1,000. By the end of 2005, the unpaid balance on the account exceeded $3,000. By November 30, 2006, the unpaid balance on the account exceeded $5,000. The 3402 account was opened on or about September 8, 2004. No payments were made on this account between its inception and November 30, 2006. By the end of 2004, the unpaid balance on the account exceeded $2,000. By the end of 2005, the unpaid balance on the account exceeded $8,000. By November 30, 2006, the unpaid balance on the account exceeded $10,000.

9. JOSEPH LEE, III forestalled and prevented efforts to collect outstanding balances on FORD's MLGW accounts through the following, among other means:

a. LEE changed the approach towards collecting on FORD's MLGW accounts. Before June 2004, when LEE became President and Chief Executive Officer of MLGW, FORD's utilities services were subject to cut-offs by MLGW when his bills became delinquent and in several instances his utilities services were cut off. Before June 2004, FORD complained at City Council meetings and committee meetings about his MLGW services being cut off. Beginning in June 2004, and continuing through at least November 30, 2006, LEE prevented cut-offs of MLGW services to FORD. He did this by the following among other means:

i. LEE, directly and indirectly, instructed MLGW employees not to cut-off FORD's utilities services even though FORD was delinquent in paying substantial balances on his MLGW bills and had repeatedly breached promises to make payments on

5

the bills.

ii. In or about June 2005, LEE directed the assignment of a code on FORD's 3402 account which made it appear as if that account was included in the On Track Program. The On Track Program was a payment program designed to help customers with limited incomes to manage debt and pay off their bills over a period of time. The 3402 account did not qualify for this program because the On Track Program was designed to assist individual -- not commercial -- customers, and the customer for the 3402 account was a commercial customer. In addition, FORD would not have satisfied the requirement that the customer not have previous bankruptcy filings; FORD filed bankruptcy petitions in 1997, 1998 and 1999. The effect of assigning the code to the 3402 account was to prevent the transmission of cut-off orders to MLGW technicians who were responsible for terminating utilities services. At the time the code was assigned to the 3402 account, no payments had been made on the account for approximately nine months (from the account's inception) and the balance on the account exceeded $7000.

iii. When in several instances MLGW employees brought the substantial delinquencies on FORD's accounts to LEE's attention, LEE took no action to address the delinquencies and in some instances he assured or impliedly assured the employees that he would address the matter. Examples of this include but are not limited to the following:

(1) A MLGW employee sent LEE an e mail on or about December 14, 2004, advising, in substance, that regarding the 3390 account, an arrangement had been made to allow FORD to bring the account current, but that the 3402 account was "past due" and there were no arrangements to bring the account current. LEE

took no action in response to the e mail.

(2) In or about February 2006, LEE received from his staff a letter to FORD advising that the 3402 account was "seriously delinquent. MLGW has not received any payment towards this account since connection of services on September 9, 2004." The letter included an itemized summary of the history of billings on that account and the absence of payments on the account. No payments were received in response to this letter. But, LEE continued to instruct his employees not to cut off the account. For example, a MLGW employee sent an e mail on or about March 7, 2006, advising that "the arrangement to pay $1,000 a week has not been honored. I last spoke with Councilman Ford March 1 and a payment was scheduled for Monday, March 6"; in response to this e mail another MLGW employee sent an e mail advising that he had been unable to reach FORD by telephone; and in response to that e mail, an assistant to LEE acting under his supervision sent an e mail stating that "Joseph does not want us to cut him off ... we will keep working with him."

(3) In or about June and July 2006, MLGW employees advised LEE that the 3402 account had been coded for the On Track Program -- even though it was not qualified for that program -- and that there were substantial unpaid balances on the account. At the time, the unpaid balance on the 3402 account was in excess of $9,000 and no payments had been made since the account was opened in September 2004. LEE implied to the employees that the matter would be addressed. No action was taken.

10. On multiple occasions, MLGW employees attempted to collect on the 3390 account, and in so doing, spoke with FORD. On more than one occasion, FORD

responded by saying he would discuss the matter with LEE.

## COUNT ONE

11. The allegations contained in background paragraphs 1 through 10 of this Indictment are hereby realleged and incorporated by reference into Count One.

12. From at least on or about June 15, 2004, through at least on or about November 30, 2006, in the Western District of Tennessee, the defendants,

----------------------------------------EDMUND H. FORD----------------------------------------
and
----------------------------------------JOSEPH LEE, III----------------------------------------

each aided and abetted by the other, did knowingly and intentionally obstruct, delay, and affect commerce, by means of extortion, as "extortion" and "commerce" are defined by Title 18, United States Code, Sections 1951(b)(2) and 1952(b)(3), in that EDMUND H. FORD did obtain property, by extortion, from and with the consent of JOSEPH LEE, III, and JOSEPH LEE, III, provided said property to EDMUND H. FORD, that is, continued service to MLGW utility accounts at FORD's private business which otherwise would be terminated due to unpaid balances, which provision of property was induced by EDMUND H. FORD under color of his official right as a Memphis City Councilman and which property was not legally due EDMUND H. FORD or his office, and which property was provided to EDMUND H. FORD as a reward for and in exchange for EDMUND H. FORD's support of LEE's nomination for and ultimately

appointment as President and Chief Executive Officer of MLGW and his support of LEE's administration of MLGW as it was overseen by the City Council.

All in violation of Title 18, United States Code, Section 1951(a) and Title 18, United States Code, Section 2.

## COUNT TWO

13. The allegations contained in background paragraphs 1 through 10 of this Indictment are hereby realleged and incorporated by reference into Count Two.

14. At all times material to this indictment, the City of Memphis, Tennessee was a local government and MLGW was a component of that government that received federal assistance in excess of $10,000 during the one year period beginning January 1, 2005, up to and including December 31, 2005.

15. From at least on or about January 1, 2005, through at least on or about December 31, 2005, in the Western District of Tennessee, the defendant,

-------------------------------------EDMUND H. FORD-------------------------------------

being an agent of the City of Memphis, Tennessee, by reason of being an elected City Councilman of said city, did knowingly and corruptly demand for the benefit of any person and accept and agree to accept a thing of value, that is, continued service to MLGW utility accounts at FORD's private business which otherwise would be terminated due to unpaid balances, intending to be influenced and rewarded, in connection with business transactions of the City of Memphis, Tennessee involving a value of $5,000 or more; in violation of Title 18, United States Code, Section 666(a)(1)(B).

## COUNT THREE

16. The allegations contained in background paragraphs 1 through 10 of this Indictment are hereby realleged and incorporated by reference into Count Three.

17. At all times material to this indictment, the City of Memphis, Tennessee was a local government and MLGW was a component of that government that received federal assistance in excess of $10,000 during the one year period beginning January 1, 2005, up to and including December 31, 2005.

18. At all times material to this indictment, EDMUND H. FORD was an agent of the City of Memphis, Tennessee, by reason of being an elected City Councilman of said city.

19. From at least on or about January 1, 2005, through at least on or about December 31, 2005, in the Western District of Tennessee, the defendant,

------------------------------------------------JOSEPH LEE, III------------------------------------------------

did knowingly and corruptly give, offer, and agree to give something of value to EDMUND H. FORD, that is, continued service to MLGW utility accounts at FORD's private business which otherwise would be terminated due to unpaid balances, with intent to influence or reward FORD, in connection with business transactions of the City of Memphis, Tennessee involving a value of $5,000 or more; in violation of Title 18, United States Code, Section 666(a)(2).

## COUNT FOUR

20. The allegations contained in background paragraphs 1 through 10 of this Indictment are hereby realleged and incorporated by reference into Count Four.

21. At all times material to this indictment, the City of Memphis, Tennessee was a local government and MLGW was a component of that government that received federal assistance in excess of $10,000 during the one year period beginning January 1, 2006, up to and including December 31, 2006.

22. From at least on or about January 1, 2006, through at least on or about December 31, 2006, in the Western District of Tennessee, the defendant,

---------------------------------------------EDMUND H. FORD---------------------------------------------

being an agent of the City of Memphis, Tennessee, by reason of being an elected City Councilman of said city, did knowingly and corruptly demand for the benefit of any person and accept and agree to accept a thing of value, that is, continued service to MLGW utility accounts at FORD's private business which otherwise would be terminated due to unpaid balances, intending to be influenced and rewarded, in connection with business transactions of the City of Memphis, Tennessee involving a value of $5,000 or more; in violation of Title 18, United States Code, Section 666(a)(1)(B).

## COUNT FIVE

23. The allegations contained in background paragraphs 1 through 10 of this Indictment are hereby realleged and incorporated by reference into Count Five.

24. At all times material to this indictment, the City of Memphis, Tennessee was a local government and MLGW was a component of that government that received federal assistance in excess of $10,000 during the one year period beginning January 1, 2006, up to and including December 31, 2006.

25. At all times material to this indictment, EDMUND H. FORD was an agent of the City of Memphis, Tennessee, by reason of being an elected City Councilman of said city.

26. From at least on or about January 1, 2006, through at least on or about December 31, 2006, in the Western District of Tennessee, the defendant,

--------------------------------------JOSEPH LEE, III--------------------------------------

did knowingly and corruptly give, offer, and agree to give something of value to EDMUND H. FORD, that is, continued service to MLGW utility accounts at FORD's private business which otherwise would be terminated due to unpaid balances, with intent to influence or reward FORD, in connection with business transactions of the City of

Memphis, Tennessee involving a value of $5,000 or more; in violation of Title 18, United States Code, Section 666(a)(2).

A TRUE BILL:

s/Grand Jury Foreperson

‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
FOREPERSON

DATED: January 7, 2008

‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
UNITED STATES ATTORNEY

15